[Civ. No. 38074. Second Dist., Div. Two. Oct. 5, 1972.]

JAMES A. KING, Cross-complainant and Appellant, v.
JOSEPH K. BORGES, Cross-defendant and Respondent.

## COUNSEL

Gainsley, Winkler, Kaufman & Ward and Richard C. Dunsay for Cross-complainant and Appellant.

Joseph K. Borges, in pro. per., and Helen E. Simmons for Cross-defendant and Respondent.

## OPINION

**COMPTON, J.**—Roosevelt and Margie Green (the Greens) sued James A. King (King) in the municipal court to recover $1,000 deposited by them in escrow. King cross-complained for libel naming as defendants the Greens and Joseph K. Borges (Borges), their attorney. King prayed for $25,000 general damages and $25,000 punitive damages. The matter was transferred to the superior court where the libel action was tried separately.[1]

A jury awarded King $3,500 compensatory damages and $2,500 punitive damages against Borges.[2] The trial judge ordered a new trial. King appeals from that order.

The Greens were in the market to buy a house. A Mrs. Taylor offered a house for sale and King was her broker. The Greens made a deposit with King of $1,000 on Taylor's house. An escrow was opened but the Greens could not qualify for the requisite financing. The escrow was mutually cancelled by Taylor and the Greens.

The Greens asked for their $1,000 deposit back but King laid claim to it and the escrow refused to deliver it.

---

[1] The Greens in the other proceeding obtained judgment against King for the deposit money. That judgment is not involved in this appeal.

[2] A non-suit was granted as to the Greens. No appeal has been taken from the judgment in their favor.

The Greens consulted Borges who wrote the following letter to the State of California, Division of Real Estate, with copies distributed as indicated:

"JOSEPH K. BORGES, Attorney at Law
1318 North La Brea Avenue
Inglewood, California—OR 8-7678
May 25, 1965

"Division of Real Estate
107 S. Broadway
Los Angeles, California Re: Home Builders Escrow
No. 7975, Taylor to Green

"Gentlemen:

"I have the following complaint to file against James A. King, real estate broker. Mr. King sold my clients, Mr. and Mrs. Roosevelt Green, a piece of property for $30,000, subject to obtaining a loan. My clients paid him $1,000 as good faith deposit. These funds were placed in Home Builders Escrow Company along with escrow instructions which were signed by the buyer and seller. My clients, the buyers, did not quality for a loan. Therefore, both the buyer and seller signed mutual cancellation instructions. The broker is demanding the $1,000 from escrow, claiming it belongs to him. He refuses to sign cancellation instructions. We have notified escrow not to release the funds to him as it is our opinion that he will spend these funds and he is one not to be trusted. Mr. King has made a demand to escrow for this $1,000. From a legal standpoint, his principal, Mrs. Taylor, canceled and if he has any claim at all, it will be against his client, the seller.

"On behalf of my clients, I would like to file an accusation against James A. King for wrongfully withholding funds not belonging to him. Perhaps a letter from one of your deputies inquiring as to his reasons for holding these funds would straighten the matter out. I am enclosing a letter received from the attorneys for the escrow company whereby they plan to interplead if the matter is not resolved. The Greens should not be forced to additional attorney's fees on behalf of the escrow company for filing said interpleader. I am sure you will understand my concern for my clients.

"Very truly yours,
S/Joseph K. Borges
Joseph K. Borges

"JKB/br
 cc: Mr. & Mrs. Roosevelt Green
 cc: Home Builders Escrow Company
 cc: James A. King
 cc: Barsam and LeVeque"

This letter upon which the claim of libel is based was written without the knowledge of the Greens, hence the non-suit as to them.

During the trial the judge instructed the jury that the letter and its copies were conditionally privileged so that the pivotal issue submitted to the jury was that of malice.

In his order granting a new trial the judge set forth the grounds therefor as Code of Civil Procedure section 657, subdivisions 1 and 7 (irregularity in the proceedings and error in law). The reason for the order was "that the letter sent to the California Divisions of Real Estate . . . was absolutely privileged under subsection 2 of Section 47 Civil Code as a communication preliminary to an official proceeding authorized by law." Thus the trial judge concluded that he had erred in instructing the jury that the letter was only conditionally privileged.

This holding refers to the original letter, the court ruling that the carbon copies sent to other persons were only conditionally privileged.

Civil Code section 47 provides in pertinent part: "A privileged publication or broadcast is one made . . . 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law; . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, . . ."

King contends that the trial judge erred first in holding that the letter was absolutely privileged and secondly in granting the new trial in any event because there was sufficient evidence to sustain the verdict on the basis of the distribution of the copies.

 The original letter to the division of real estate was absolutely privileged.

Business and Professions Code, division IV, section 10004 et seq., contain a licensing and regulatory scheme which governs, among other things, the conduct of the real estate brokers in this state.

Business and Professions Code section 10176 empowers the Real Estate Commissioner, either on his own motion or upon a written verified complaint of any person, to investigate the actions of any person licensed under division IV. The commissioner is authorized to suspend or revoke a license for various types of specific misconduct, as well as "Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing." (Bus. & Prof. Code, § 10176, subd. (i).)

By force of Business and Professions Code section 10100, the Real Estate Commissioner, in proceeding to suspend or revoke a license, is required to proceed under section 11500 et seq. of the Government Code, which sections in turn control administrative adjudications. Government Code section 11501 specifically names the Real Estate Commissioner as an agency empowered to conduct administrative hearings.

Government Code section 11503 through 11510 provides for the procedure for an administrative hearing and gives the commissioner power of subpoena.

■ "The phrase 'in any other official proceeding authorized by law' [contained] in section 47, subdivision 2, has been interpreted to encompass those proceedings which resemble judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings. [Citations.] In accord with the California cases, the general rule is now well established that *the absolute privilege is applicable not only to judicial but also to quasi-judicial proceedings* and defamatory statements made in both judicial and quasi-judicial proceedings having some relation thereto are absolutely privileged [citations]." (*Ascherman v. Natanson,* 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656], petition denied April 26, 1972.)

It must be conceded that the activities of the commissioner in investigating and disciplining licensees is an "official proceeding authorized by law" and thus within the ambit of Civil Code section 47, subdivision 2 so that any matter communicated to the commissioner having some relation to such proceeding would be absolutely privileged.

■ King argues that no action or investigation was pending at the time Borges wrote the letter and thus under the circumstances the privilege did not attach. We disagree.

Civil Code section 47, subdivision 2 specifically exempts from the privilege statements contained in pleadings in actions for dissolution of marriage when the statements concern persons against whom no relief is sought. By implication then all other pleadings including the initial complaint are part of the judicial proceedings.

The letter in the case at bar does not technically qualify as a formal complaint or accusation which itself would precipitate an administrative adjudication. It is in the nature of a request for investigation. As to the latter type of communication, an absolute privilege is not uniformly available in all jurisdictions.

"Some authorities have also extended the rule of absolute privilege so as to protect complaints made, or information given, to a proper officer with regard to crime which is within his authority to investigate or prosecute." (53 C.J.S., Libel & Slander, § 104.)

The Restatement of Torts, volume 3, section 587 provides as follows: "A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceedings or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto." (Also see *Washer* v. *Bank of America,* 21 Cal.2d 822 and cases cited therein at p. 832 [136 P.2d 297, 155 A.L.R. 1338].)

■ The absolute privilege in California is "not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits." (*Albertson* v. *Raboff,* 46 Cal.2d 375, at p. 381 [295 P.2d 405]; also see *Whelan* v. *Wolford,* 164 Cal.App.2d 689 [331 P.2d 86].)

In *Layne* v. *Kirby,* 208 Cal. 694, 697 [284 P. 441], an action for libel was premised on a letter written to the Secretary of War. On appeal from the sustaining of a demurrer, defendant claimed an absolute privilege under Civil Code section 47, subdivision 2. In reversing the order sustaining the demurrer, the court recognized the possibility that if the communication addressed by the defendant to the Secretary of War "was intended to, or did in fact, initiate an authorized proceeding for any purpose" the communication would be absolutely privileged by virtue of the provisions of subdivision 2 of section 47 of the Civil Code.

It can be argued that application of an unqualified privilege to the type of communication here involved will unduly occupy the comissioner in tracking down spurious allegations and will provide no protection to those persons wrongfully accused.

However, the commissioner presumably has adequate expertise to sift the "wheat from the chaff." Furthermore, if the commissioner suspects that a complaint is false or improperly motivated he has the power to require a verified statement with its accompanying sanction for perjury before taking any action.

Essentially the question is one of legislative intent. The Legislature has available to it methods for preventing or minimizing false complaints. (See for example Pen. Code, § 148.5 making it a misdemeanor to falsely report crime to a police officer.)

However, in enacting Civil Code section 47, subdivision 2, the Legislature used language adequately broad in scope to cover the type of letter at hand.

We conclude that a communication to an official administrative agency, which communication is designed to prompt action by that agency, is as much a part of the "official proceeding" as a communication made after the proceedings have commenced.

It seems obvious that in order for the commissioner to be effective there must be an open channel of communication by which citizens can call his attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. A qualified privilege is inadequate protection under the circumstances.

Malice at best is a difficult concept to articulate. Our legal system of fact finding, good as it is, does not guarantee complete accuracy in every case. Even in the case of an actor with the purest of motives, there is always a possibility that the trier of fact on conflicting evidence might find he acted with malice sufficient to defeat a qualified privilege.

The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential.

█ No such considerations apply to the copies which Borges distributed to persons other than the state agency. The interests of the recipients may be such as to bring the copies within the qualified privilege of Civil Code section 47, subdivision 3. While this interest might include the knowledge of the fact that a complaint had been made to the commissioner, protection of the efficacy of quasi-judicial proceedings does not require that these persons be advised of the details of the allegation.

█ As to King's second claim of error, no abuse of the trial court's discretion has been demonstrated. The jury returned a single general verdict and it cannot be determined what effect the erroneous instruction had on the verdict.

█ On an appeal from an order granting a new trial, review is limited to determining whether there was any support for the trial judge's ruling. Such ruling will not be disturbed unless a manifest abuse of discretion is

demonstrated. (*Mehling* v. *Schield,* 253 Cal.App.2d 55 [61 Cal.Rptr. 159]; *Christian* v. *Bolls,* 7 Cal.App.3d 408 [86 Cal.Rptr. 545].)

The order appealed from is affirmed.

Roth, P. J., and Herndon, J., concurred.