[Civ. No. 48819. Second Dist., Div. Five. May 24, 1977.]

KURT IMIG, Plaintiff and Appellant, v.
JOSE FERRAR, Defendant and Respondent.

**COUNSEL**

Dryden, Harrington & Swartz, George J. Franscell, Dale B. Goldfarb and Steven Lincoln Paine for Plaintiff and Appellant.

Bonelli, Malone, Wood & Lyden and Glen E. Tucker for Defendant and Respondent.

## OPINION

**ASHBY, J.**—Plaintiff Imig filed a complaint against various defendants alleging assault and battery, and slander. A cause of action for malicious prosecution was added in a first amended complaint. This appeal involves only defendant Ferrar, who was named in the third and fourth causes of action (slander and malicious prosecution). As to these counts, the trial court sustained defendant's demurrer to the first amended complaint without leave to amend. Plaintiff appeals from the order of dismissal subsequently entered. (Code Civ. Proc., §§ 581, subd. 3, 581d.)

According to the allegations of the assault and battery counts which are not directly involved here, plaintiff, a police officer for the City of Los Angeles, was in the Van Nuys store of Big Five Department Store (another defendant), and was assaulted by Goldstein (another defendant), an employee of Big Five. In the third count, slander, it is alleged that plaintiff, acting in his official capacity as a police officer, requested aid from defendant Ferrar, who was a "manager, employee, and agent" of defendant Big Five.

Ferrar "did subsequently file formal charges against plaintiff KURT IMIG that plaintiff KURT IMIG was harassing employees of the defendant BIG FIVE DEPARTMENT STORE. [¶] That as a result of such charges, to wit, Charge 1, pertaining to profanity and brutality, and Charge 2, pertaining to conduct unbecoming an officer, plaintiff was subjected to a Los Angeles Police Department official investigation, numerous interrogations and scientific testing by the Los Angeles Police Department. [¶] That the statement and charges made by the defendants, as well as the allegation in the harassment report, were made by the defendants with the specific knowledge on their parts that said statements and charges were untrue and made by the defendants to vex, harass and annoy the plaintiff in his occupation as a police officer. . . . [¶] The aforementioned slanderous utterances and misrepresentations were made with actual malice and in a wilful, wanton and reckless manner. . . . [¶] In uttering the slanderous words and misrepresentations hereinabove alleged, defendants acted with a state of mind arising from hatred or ill-will toward plaintiff, maliciously, with a conscious indifference, and with knowledge that said uttered words were slanderous."

The fourth count, for malicious prosecution, was not included in the original complaint. The demurrer of Ferrar and Big Five to the third cause of action in the original complaint was on grounds of failure to state a cause of action, and uncertainty, in that the complaint did not

specify when, where, or with whom the "formal charges" were filed, and did not specify the alleged slanderous language. In defendant's memorandum of points and authorities it was argued that no cause of action was stated because the making of a complaint to the Los Angeles Police Department concerning conduct of an officer was protected by the absolute privilege for a publication made in an "official proceeding." (Civ. Code, § 47, subd. 2.)

The record on appeal does not contain the ruling of the trial court on the demurrers to the original complaint. However, plaintiff thereafter filed his first amended complaint. There was virtually no change in the allegations of the third cause of action. However, a fourth cause of action for malicious prosecution was added, as follows: "(The following cause of action is an alternative cause of action. It will not be effective unless there is a finding that a Police Board of Rights or internal affairs investigation is an official proceeding within the meaning of Civil Code Section 47(2).) [¶] [Defendant Ferrar], as manager, employee and agent of BIG FIVE DEPARTMENT STORE, . . . filed formal charges against plaintiff KURT IMIG, accusing plaintiff of harassing employees of defendant BIG FIVE DEPARTMENT STORE. . . . As a result of said charges, to wit, Charge 1 pertaining to profanity and brutality, and Charge 2, pertaining to conduct unbecoming an officer, an investigation was undertaken by the Los Angeles Police Department into plaintiff's ability to continue in his employment with the Police Department. This official investigation undertaken by the Police Department was finally terminated in plaintiff's favor by finding that all of the defendants' accusations were totally groundless. [¶] Defendants, and each of them, acted without reasonable or probable cause in filing the above-alleged formal charges and in instituting the investigation. [¶] Defendants, and each of them, in filing the above-alleged charges, acted intentionally, wilfully, wantonly and maliciously for the sole purpose of harassing plaintiff herein. The defendants, and each of them, knew, at the time the formal charges were filed, that they were untrue and not supportable by any evidence. . . . [¶] [Defendants] acted with a state of mind arising from hatred or ill-will towards plaintiff, with the intent to vex, harass and injure plaintiff. . . ."

Ferrar and Big Five again demurred to the third cause of action on the same grounds as before, that the statements were absolutely privileged, and that the words were not set forth.

Ferrar and Big Five also demurred to the malicious prosecution count, on grounds of failure to state a cause of action, and uncertainty. It was argued that "Plaintiff carefully refrained from stating who the formal

charges were filed with. The main reason obviously was to forestall the obvious additional defense to the slander claim that charges filed with any official administrative body are absolutely privileged. . . . [¶] However, this refusal to name the body with whom the charges were made creates a fatal defect as to the purported fourth cause of action, purportedly based on malicious prosecution. To charge malicious prosecution it must be shown that there were charges made before some judicial body. The mere fact that an investigation was made by the police department does not set forth any prosecution before any judicial body."

In opposition to the demurrers, plaintiff argued that defendants "cannot have it both ways; if their remarks are privileged because uttered within the course of an official proceeding, then their malicious institution of that proceeding, without probable cause, subjects them to liability for malicious prosecution."

However, the trial court sustained the demurrers to both causes of action without leave to amend. At the hearing, the court stated that its ruling on the third cause of action was based on privilege. As to the fourth cause of action, the court stated: "But I am not certain that it is a prosecution, and it is going to be just as easy for you to get a definitive ruling on the fourth as the third. You might as well do it."[1]

## DEFAMATION

 In the third cause of action it is alleged that defendant filed formal charges against plaintiff "pertaining to profanity and brutality [and] conduct unbecoming an officer," which caused plaintiff to be "subjected to a Los Angeles Police Department official investigation, numerous interrogations and scientific testing by the Los Angeles Police Department." We agree with the trial court[2] that no cause of action was stated because the complaint shows on its face that the alleged publications were absolutely privileged under Civil Code section 47, subdivision 2.

---

[1] The court also stated: "I can find no rulings of any court concerning the gray area of informal police procedure. . . . [¶] And I'm impressed with your alternative theory of slander or malicious prosecution, and I think both of them should be privileged if they are not, and I think that long before the trial you should find out whether you should be in court or not."

[2] Oddly, defendant does not argue the privilege point on appeal, but urges the defamation count was defective in failing to specify the exact words used.

That section renders absolutely privileged (*Washer* v. *Bank of America*, 21 Cal.2d 822, 832 [136 P.2d 297, 155 A.L.R. 1338]) a publication made "In any (1) legislative or (2) judicial proceeding, or (3) *in any other official proceeding authorized by law*; . . ." (Italics added.) It is now well established that this privilege extends to transactions of administrative boards and quasi-judicial proceedings. (*King* v. *Borges*, 28 Cal.App.3d 27, 31-32 [104 Cal.Rptr. 414] (investigation conducted by Real Estate Commissioner); *Ascherman* v. *Natanson*, 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656] (hospital district board); *Goodley* v. *Sullivant*, 32 Cal.App.3d 619, 625 [108 Cal.Rptr. 451] (private hospital board established pursuant to Bus. & Prof. Code, § 2392.5); *Frisk* v. *Merrihew*, 42 Cal.App.3d 319, 324 [116 Cal.Rptr. 781] (school board); *Martin* v. *Kearney*, 51 Cal.App.3d 309, 311 [124 Cal.Rptr. 281] (high school principal's investigation of complaint about teacher, pursuant to school board rules).)

Procedures for the discipline, suspension, or removal from office of police officers of the City of Los Angeles are specified in section 202 of the Los Angeles City Charter and section 4.186 of the Los Angeles Administrative Code, and are therefore official proceedings authorized by law. (See *Ascherman* v. *Natanson, supra* at p. 866; *Goodley* v. *Sullivant, supra*; *Martin* v. *Kearney, supra*.)

Plaintiff argues that the original publication which caused the investigation to be initiated was not itself part of an official proceeding, but was preliminary thereto and not under oath, and that therefore the absolute privilege should not apply. But the California authorities have held that "a communication to an official administrative agency, which communication is designed to prompt action by that agency, is as much a part of the 'official proceeding' as a communication made after the proceedings have commenced." (*King* v. *Borges, supra*, 28 Cal.App.3d at p. 34; *Martin* v. *Kearney, supra*, 51 Cal.App.3d at p. 311; *Ascherman* v. *Natanson, supra*, 23 Cal.App.3d at p. 865.) In *King*, the absolute privilege was applied to a letter written to the state Real Estate Commissioner charging misconduct by a broker. Likewise in *Martin* the privilege was extended to a letter written by a parent to a high school principal alleging unfitness of a teacher. In *Ascherman* it was extended to an interview which was preliminary to a hearing before the hospital board. The policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing. As stated in *King* v. *Borges, supra*, 28 Cal.App.3d 27, 34, "It seems obvious that in order for the commissioner to be effective there must be an open channel of

communication by which citizens can call his attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. A qualified privilege is inadequate protection under the circumstances. . . . [¶] The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential." The out-of-state authorities relied upon by plaintiff[3] are inconsistent with these California authorities, which we regard as controlling.

In *Martin* v. *Kearney, supra,* 51 Cal.App.3d at page 312, the court stated: ". . . One of the crosses a public school teacher must bear is intemperate complaint addressed to school administrators by overly solicitous parents concerned about the teacher's conduct in the classroom. Since the law compels parents to send their children to school, appropriate channels for the airing of supposed grievances against the operation of the school system must remain open." We agree with plaintiff that it is distressing and demoralizing for police officers to be subjected to false accusations of brutality, but that may be one of the crosses that a police officer must bear, in light of the power and deadly force the state places in his hands. In *Pettitt* v. *Levy,* 28 Cal.App.3d 484, 492 [104 Cal.Rptr. 650], the court said: "It is not gratifying to reach a result which insulates those guilty of alleged heinous conduct from answering therefor. However, we are satisfied that the purpose and philosophy of the privilege compels this result and that any narrowing of the privilege to redress this grievance would produce mischiefs far worse."

■ Plaintiff argues that the absolute privilege has been held inapplicable where the letter which is designed to prompt official action is sent to the wrong agency. In *Katz* v. *Rosen,* 48 Cal.App.3d 1032, 1036-1037 [121 Cal.Rptr. 853], the court indicated that a letter complaining of misconduct by an attorney would have been absolutely privileged if addressed to the State Bar, but was only qualifiedly privileged when addressed to a local bar association which lacked disciplinary authority. Plaintiff appears to argue that the publication here had to be directed to the mayor or the chief of police in order to qualify for the privilege. But the pleading here clearly implies that the publication was made to some

[3]*Elder* v. *Holland* (1967) 208 Va. 15 [155 S.E.2d 369, 374-375]; *Sowder* v. *Nolan* (D.C.Mun.App. 1956) 125 A.2d 52, 54; *Bienvenu* v. *Angelle* (1969) 254 La. 182 [223 So.2d 140, 144].)

appropriate authority in the police department. (See *Martin* v. *Kearney, supra,* 51 Cal.App.3d 309, 312 ("appropriate channels"). Furthermore, any ambiguity in the record as to exactly where the publication was made is the fault of plaintiff, as drafter of the complaint. We find nothing whatsoever in the pleading which shows the privilege was lost by publication to an inappropriate agency.

We hold that the alleged communication to the Los Angeles Police Department concerning misconduct by one of its officers is protected by the absolute privilege for publications made in official proceedings authorized by law.

### MALICIOUS PROSECUTION

Plaintiff contends that even if his cause of action for defamation is precluded by the absolute privilege, he has adequately stated a cause of action for malicious prosecution in the fourth count. The rule is stated in *Albertson* v. *Raboff,* 46 Cal.2d 375, 382 [295 P.2d 405], that "the fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied."

In *Hardy* v. *Vial,* 48 Cal.2d 577, 580-581 [311 P.2d 494], the Supreme Court held that a malicious prosecution action may be founded upon a proceeding before an administrative body. It approved the rule of section 680 of the Restatement of Torts which declares: "One who initiates or procures the initiation of civil proceedings against another before an administrative board which has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if (a) the proceedings are initiated (i) without probable cause to believe that the charge or claim on which the proceedings are based is well founded, and (ii) primarily for a purpose other than that of securing appropriate action by the board, and (b) the proceedings have terminated in favor of the person against whom they are brought."

In his fourth cause of action plaintiff repeats the allegations that charges were filed pertaining to profanity, brutality, and conduct unbecoming an officer, which caused an "investigation" to be undertak-

en by the Los Angeles Police Department "into plaintiff's ability to continue in his employment with the Police Department." It is then alleged that "[t]his official investigation undertaken by the Police Department was finally terminated in plaintiff's favor by finding that all of the defendants' accusations were totally groundless," that defendants filed the charges without reasonable or probable cause, that defendants knew that the charges were untrue and not supportable by any evidence, and that defendants acted from hatred or ill-will towards plaintiff, with the intent to vex, harass and injure plaintiff.

Defendant contends that plaintiff has failed to state a cause of action for wrongful initiation of a proceeding before an administrative board because plaintiff alleges nothing more than that an "investigation" occurred. Nowhere in the first amended complaint is it alleged that any of the formal proceedings provided for in section 202 of the Los Angeles City Charter and section 4.186 of the Los Angeles Administrative Code were initiated, i.e., the filing by the chief of police of a verified complaint with the board of police commissioners, the empanelment of a board of rights, or a hearing and decision on those charges by the board of rights. From all that appears, there was nothing more than an "investigation," and no formal proceedings were ever instituted against plaintiff because the results of the investigation were favorable to him. Plaintiff conceded at oral argument that no formal complaint was filed by the chief of police. As we shall discuss, a mere investigation which does not lead to the initiation of proceedings before an administrative board having power to take action adversely affecting plaintiff's legally protected interests is not a sufficient basis upon which to found a malicious prosecution action under *Hardy* v. *Vial, supra.*

But, plaintiff argues, defendant "cannot have it both ways"; plaintiff contends that if the privilege for offical proceedings applies to the third cause of action, then it follows that there were official proceedings for purposes of malicious prosecution.

Plaintiff's argument has surface appeal, but requires further analy- The privilege has been extended to publications *preliminary to* official proceedings, which are intended by the author to initiate official action. However, to justify recovery for malicious prosecution, there must actually have been "the initiation of civil proceedings against another before an administrative board which has power to take action adversely affecting the legally protected interests of the other" and, of course, the favorable termination of those proceedings. If the publication does not lead the official agency to initiate such proceedings,

the plaintiff has not suffered the type of injury for which a malicious prosecution action lies. As stated in *Hardy* v. *Vial, supra,* "The theory of these authorities is that the same *harmful consequences* may result from the malicious *institution* of administrative proceedings as from judicial proceedings maliciously *begun,* whether criminal or civil in nature." (48 Cal.2d at pp. 580-581; italics added. See com. b., Rest., Torts, § 680, pp. 458-459; see also 52 Am.Jur.2d, Malicious Prosecution, § 21, pp. 198-199.)

To illustrate, suppose that a person writes a letter to the state Commissioner of Real Estate accusing a broker of misconduct, and the commissioner dismisses the complaint out of hand as patently frivolous.[4] No action for malicious prosecution could lie in such circumstances, because the broker has not actually been subjected to the initiation of administrative proceedings against him.

In *Ferraris* v. *Levy,* 223 Cal.App.2d 408 [36 Cal.Rptr. 30], the plaintiff alleged malicious prosecution in that defendants had (1) procured the District Attorney of San Francisco to issue a citation for petty theft and malicious mischief and (2) procured from the Postmaster of San Francisco an order to show cause why the plaintiff should not be prosecuted for the destruction and concealment of another's mail. Pointing out that for purposes of malicious prosecution of criminal proceedings, the proceeding is not deemed instituted unless and until a warrant or summons is issued, the court held that no cause of action was stated because "both the district attorney and the postmaster refused to institute any proceedings against the plaintiff." (*Id.,* at p. 412.)

The instant case is similar to *Ferraris,* because the results of the investigation convinced the authorities not to initiate proceedings against plaintiff. Under *Ferraris,* the fact that plaintiff was put to a certain amount of inconvenience to persuade the department that the charges were unfounded is not itself sufficient to justify a malicious prosecution action.[5]

---

[4] In *King* v. *Borges, supra,* 28 Cal.App.3d 27, 33, the court said, "[T]he commissioner presumably has adequate expertise to sift the 'wheat from the chaff.' "

[5] Two out-of-state cases cited by plaintiff are not in point. Although they contain the term "investigation," the opinions show that the proceedings actually involved were formal quasi-judicial hearings. (*Fulton* v. *Ingalls* (1914) 165 App.Div. 323 [151 N.Y.S. 130, 131]; *Carver* v. *Lykes* (1964) 262 N.C. 345 [137 S.E.2d 139, 145].)

■ Sometimes, however, the invasion of the plaintiff's legally protected interest occurs without a formal hearing, and it is the plaintiff who initiates the formal proceedings in order to secure reinstatement of his position or license. In such cases a malicious prosecution action may lie. (*Hardy* v. *Vial, supra,* 48 Cal.2d 577, 580 (fired as professor at a state college, the plaintiff was reinstated by the State Personnel Board); *Melvin* v. *Pence* (D.C.Cir. 1942) 130 F.2d 423, 424-425 [76 App.D.C. 154, 143 A.L.R. 149] (plaintiff's license as a detective was not renewed, but was later reinstated by the license denial and revocation board).)

It is possible that the instant case involves this type of situation. The first amended complaint does allege that, "As a further direct and proximate result of the malicious institution of the above-alleged action by the defendants, . . . plaintiff was prevented from attending to his usual occupation resulting in a loss of earnings . . . ." This vague allegation may mean that plaintiff was suspended from duty pending the investigation. The chief of police has the power under charter section 202(2) to suspend an officer or employee for up to 30 days, subject to the officer's right to request a hearing before a board of rights. The pleading does not specifically allege this is what occurred, and it may be that the reference to loss of hours and earnings concerns something else, but under the circumstances we believe that plaintiff should be given another opportunity to amend if this is what he had in mind. (See *Youngman* v. *Nevada Irrigation Dist.,* 70 Cal.2d 240, 251 [74 Cal.Rptr. 398, 449 P.2d 462].)

The order of dismissal is reversed with directions to allow plaintiff a further opportunity to amend to attempt to state a cause of action for malicious prosecution.

Kaus, P. J., and Hastings, J., concurred.