[Civ. No. 42924. First Dist., Div. One. Aug. 17, 1978.]

JOHN H. TIEDEMANN, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
RICHARD S. NAIR, Real Party in Interest.

COUNSEL

Boornazian, King & Schulze, James L. McIntosh and Barbara Rosenfeld Davis for Petitioner.

No appearance for Respondent.

Crosby, Heafey, Roach & May, Jay R. Martin, Clinton A. Johnson, Roy H. Ikeda, Christine Helwick and John C. Siegel for Real Party in Interest.

OPINION

**RACANELLI, P. J.**—In this proceeding we consider the question whether an informer's communication to an enforcement agency of the United States Treasury Department concerning a possible perpetration of a tax fraud falls within the scope of absolute privilege under the provisions of section 47, subdivision 2, of the Civil Code.[1] We conclude

[1]Under the relevant language of Civil Code section 47, subdivision 2, an otherwise defamatory publication is privileged if made "In any (1) legislative or (2) judicial

for the reasons which we discuss that the statutory privilege applies immunizing the informer from liability in a defamation suit based upon such communication.

The petition seeking relief in mandamus and prohibition stems from the following sequence of events as reflected in the record before us: On December 11, 1973, petitioner Tiedemann, a disgruntled former business associate of real party in interest Nair, confidentially informed agents of the intelligence division of the federal Internal Revenue Service that Nair (1) failed to report taxable income and overstated allowable deductions in connection with certain mutual business and securities transactions and (2) was obliged to terminate his former employment as a stock brokerage officer due to improperly claiming personal expenditures through the firm's business expense accounts. Through a fortuitous circumstance, Nair learned of the incriminating charge in mid-January 1975; deducing that Tiedemann was the anonymous source of the defamatory statements,[2] Nair filed the underlying action requesting general and punitive damages for libel and slander based upon such statements. Following the overruling of his general demurrer, Tiedemann filed an answer setting up affirmative defenses, including a claim of privilege pursuant to Civil Code section 47, subdivision 3;[3] thereafter, Tiedemann's motion for judgment on the pleadings grounded on a theory of absolute privilege was denied in July 1977. Subsequently, Tiedemann moved for summary judgment on the same grounds (accompanied by alternative requests of reconsideration for judgment on the pleadings or sustaining of his earlier demurrer without leave to amend). On November 16, 1977, the court denied

proceeding, or (3) in any other official proceeding authorized by law; . . ." Unless otherwise indicated, all statutory references are to the Civil Code.

[2] Nair's tax returns were audited during the years 1974-1976. In January 1975, he received a copy of an Internal Revenue Service intelligence information report apparently mailed to him by inadvertence. The report revealed the content of the defamatory communication concerning Nair personally furnished by an anonymous informant on December 11, 1973. From the general description of the informant and the subject-matter of the disclosure contained in the report, Nair concluded that Tiedemann was the unnamed informant. That assumption was fortified by Nair's discovery of Tiedemann's complaint for damages against the federal government filed in December 1976, alleging negligent and intentional disclosure "[o]n or about January 15, 1975, . . . to said taxpayer" that plaintiff (Tiedemann) had met with intelligence agents of the Treasury Department on or before December 11, 1973, and provided them with information concerning possible fraudulent acts of a "certain" taxpayer on condition of anonymity and confidentiality.

[3] Tiedemann's answer incorrectly refers to section 47, subdivision 3, as the authority for the absolute privilege asserted; however, it is clear from a review of the supporting and opposing memoranda of points and authorities that the sole issue of absolute privilege was framed and argued and that the reference intended was to that part of section 47, subdivision 2, denominated "(3) in any other official proceeding authorized by law; . . ."

Tiedemann's motion but granted Nair's then pending motion to compel answers over Tiedemann's objections based upon constitutional grounds and claim of confidentiality.[4] On January 19, 1978, we summarily denied Tiedemann's petition to mandate the entry of summary judgment (or alternative relief) and to prohibit enforcement of the discovery order. On February 10, 1978, Tiedemann's petition for hearing was granted by the state Supreme Court which ordered the matter retransferred to this court with directions to issue an alternative writ; we issued our alternative writ on the same day. Thereafter, Nair lodged his return answering and demurring to the petition.

### Contentions

Tiedemann first contends that statements made to the Internal Revenue Service agency in order to initiate official action to investigate a possible tax fraud constitutes a "privileged publication . . . made . . . [i]n [an] . . . official proceeding authorized by law; . . ." (§ 47, subd. 2.) Nair, after first demurring that no cause is stated justifying extraordinary review, vigorously resists the claim of privilege contending that it may not be invoked where (1) the publication motivated solely by revenge could not achieve a proper objective of the agency; (2) the publisher has no personal stake in the official administrative proceedings; and (3) the statements are wilfully false in violation of federal law. Although other questions of privilege during discovery are also raised, our resolution of the dominant issue of statutory privilege is dispositive herein.

### I.  Propriety of Extraordinary Review

Preliminarily, we address the challenge raised by real party that review by mandamus is inappropriate. The prerogative writ has long been recognized as an appropriate vehicle to review interlocutory orders where questions of a grave nature and of significant legal impact requiring immediate resolution are presented (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]), where an abuse of discretion is patently manifest (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 579 [114 Cal.Rptr. 106, 522 P.2d 666]), or where an important question of privilege is presented (*Sav-on-Drugs, Inc.* v. *Superior Court*

---

[4]During his deposition, Tiedemann invoked his Fifth Amendment privilege in refusing to answer a series of questions propounded concerning conversations with Internal Revenue Service agents involving treatment of the reported business transactions on Nair's tax returns. Four questions pertaining to Tiedemann's own audited tax return were objected to on grounds of irrelevancy.

(1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]; *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309]; see generally 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 89, pp. 3865-3866). The issues presented by the petition fall well within the ambit of review by mandamus. Moreover, the granting of an alternative writ itself constitutes a determination of the absence of another adequate remedy. (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 155 [118 Cal.Rptr. 14, 529 P.2d 46]; *Babb* v. *Superior Court, supra,* at p. 851.) Accordingly, we turn to the merits of the petition.

## II. *Absolute Privilege*

██ The thrust of petitioner's claim is that a communication made to agents of the federal Internal Revenue Service, an official administrative agency, designed to initiate appropriate investigative and enforcement proceedings, constitutes a publication made in an "official proceeding authorized by law" (§ 47, subd. 2) and is cloaked with absolute immunity. We examine that claim in light of existing authority interpreting the scope of absolute privilege provided under the statute.

██ It is now well established in California case law that the privilege conferred under subdivision 2 is absolute and unaffected by the presence of malice. (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 864-865 [100 Cal.Rptr. 656]; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405]; *Gosewisch* v. *Doran* (1911) 161 Cal. 511, 513-515 [119 P. 656]; *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 824 [106 Cal.Rptr. 818]; *Hackethal* v. *Weissbein* (1978) 82 Cal.App.3d 559, 563 [147 Cal.Rptr. 284].) The absolute immunity attaches if all of the following conditions have been met: "the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objectives of the litigation; and (4) involved litigants or other participants authorized by law." (*Bradley* v. *Hartford Acc. & Indem. Co., supra,* at p. 825; accord: *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 925 [134 Cal.Rptr. 145]; and *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 301 [113 Cal.Rptr. 113].)

██ The descriptive statutory phrase "in any other official proceeding authorized by law" has been broadly interpreted to include those proceedings which resemble judicial and legislative proceedings such as administrative boards and quasi-judicial and quasi-legislative proceedings. (*Ascherman* v. *Natanson, supra,* 23 Cal.App.3d 861, 865, and authorities there collected.) In order that the privilege apply, it is

unnecessary that the defamatory matter be relevant or material to an issue before the tribunal but need only have some proper connection or relation to the proceeding and in achieving its objectives. (*Ascherman* v. *Natanson, supra,* at p. 865; *Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d 818, 824.) The privilege embraces preliminary conversations attendant upon such proceeding so long as they are in some way related to or connected to the pending or contemplated action. (*Ascherman* v. *Natanson, supra,* at p. 865; see Rest., Torts, § 588.)

In determining whether an administrative body or agency possesses such quasi-judicial power, the preliminary factors to be determined are "(1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts and, more importantly, (3) whether its power affects the personal or property rights of private persons [citations]." (*Ascherman* v. *Natanson, supra,* 23 Cal.App.3d 861, 865; accord: *Hackethal* v. *Weissbein, supra,* 82 Cal.App.3d 559, 564.)

The privilege doctrine embodied in the statute is grounded upon considerations of public policy designed *"to afford litigants freedom of access to the courts . . . and to promote the unfettered administration of justice* even though as an incidental result it may [sometimes] . . . provide . . . immunity to the . . . malignant slanderer [citations] . . . ."* (*Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d 818, 823.) Consistent with that underlying purpose, California decisions have carefully constructed narrow perimeters within which absolute protection is afforded restricting immunity to those instances furthering the purpose of the litigation in promotion of the interest of justice. (*Bradley* v. *Hartford Acc. & Indem. Co., supra,* at p. 826 [defamatory communications outside of the legal proceedings to disinterested third parties made by those not a party to the action unprivileged]; *Younger* v. *Solomon, supra,* 38 Cal.App.3d 289 [disclosure made during discovery of the defendant attorney's pending disciplinary proceeding unprivileged as having no logical relation to the action]); however, doubts as to whether the necessary relationship or connection exists are to be resolved in favor of a finding of privilege. (See *Twyford* v. *Twyford, supra,* 63 Cal.App.3d 916, 926.) Similarly, strong policy reasons exist to assure free and open channels of communication between citizens and public agencies and authorities charged with the responsibility of investigating wrongdoing (*Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48 [138 Cal.Rptr. 540] [citizen's complaint to police department alleging officer's brutality subject to absolute privi-

lege]; see also Prosser, Law of Torts (4th ed. 1971) § 114, pp. 780-781) without which protection would effectively close such important channels (*King* v. *Borges* (1972) 28 Cal.App.3d 27 [104 Cal.Rptr. 414] [informal complaint to state Division of Real Estate charging broker with improper conduct held privileged]).

■ In applying the foregoing principles, we first determine that proceedings undertaken by an official investigative and enforcement branch of the Internal Revenue Service, whose broad duties imposed by law (26 U.S.C. § 7601 et seq.) include authority to conduct investigations to determine tax liability (§ 7601(a)), summon witnesses, subpoena records and take testimony (§§ 7602, 7603), and serve process and perform arrests and seizures in the enforcement of criminal provisions of federal revenue laws (§ 7608(b)), and to pay specified sums in the detection, trial and punishment of criminal offenders (§ 7623), would clearly qualify as a quasi-judicial agency regularly engaged in an "official proceeding authorized by law"; nor does Nair seriously contend otherwise. And communications to such an official agency designed to prompt regulatory enforcement action must be considered a part of the official proceeding itself. (*King* v. *Borges, supra,* at p. 34; cf. *Katz* v. *Rosen* (1975) 48 Cal.App.3d 1032 [121 Cal.Rptr. 853] [holding informal complaints received by a *local* bar association as only conditionally privileged under Civ. Code, § 47 subd. 3].) ■ The very fact that the agency undertook a series of audits of Nair's returns, including the period involving the reported transactions, reveals that the challenged statements had some logical relation or connection to the official agency proceeding. Assuming, arguendo, that the statements may have been maliciously motivated through a feeling of revenge as contended, as long as such statements were made to achieve the intended objective of the quasi-judicial proceeding, i.e., institution of a tax investigation proceeding, the presence of malice is irrelevant. (*Ascherman* v. *Natanson, supra,* 23 Cal.App.3d 861, 865; *Hackethal* v. *Weissbein, supra,* 82 Cal.App.3d 559, 563; *Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d 818, 824.) As the reporting informant and potential witness in any continuing or subsequent proceedings (see 26 U.S.C. § 7602) Tiedemann's status fulfills the final condition of authorized participation. (*Bradley* v. *Hartford Acc. & Indem. Co., supra,* at p. 825; *Ascherman* v. *Natanson, supra,* at p. 865.) None of the authorities relied upon by Nair impose a further condition that the alleged defamer possess some undefined "personal stake" in the eventual outcome of the proceeding itself.

We recognize that the fear of unfounded and harmful charges cast under a shield of immunity may in some instances be real and substantial (cf. *Di Tullio* v. *Deacy* (1958) 16 Misc.2d 585 [183 N.Y.S.2d 585]); nevertheless, the broad policy considerations underlying the statutory privilege outweigh the likelihood that on occasion the victim of a libelous or slanderous statement may be effectively denied any civil redress (*Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d 818, 823; *Imig* v. *Ferrar, supra,* 70 Cal.App.3d 48, 55). Moreover, although wilfully false statements concerning a matter within the jurisdiction of a federal agency may subject the publisher to criminal prosecution (18 U.S.C. § 1001), under the special facts demonstrated herein such circumstance does not render the statements vulnerable to a civil defamation action.

III. *Summary Judgment*

Tiedemann's motion for summary judgment based upon the verified pleadings and other papers on file (including Nair's answers to certain interrogatories that he (Nair) had no knowledge of any other defamatory statement or publication than that complained of), raised no triable issue of fact concerning the pivotal claim of absolute immunity. On the undisputed facts presented in the record, the claim was applicable as a matter of law; accordingly, summary relief should have been granted. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [112 Cal.Rptr. 786, 520 P.2d 10]; *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 147-148 [60 Cal.Rptr. 377, 429 P.2d 889]; see also *Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909 [124 Cal.Rptr. 621]; *People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56 [118 Cal.Rptr. 438]; see generally 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, §§ 174, 182, pp. 2827, 2833-2834.) Since we determine that Tiedemann is entitled to summary judgment, it is unnecessary to reach the remaining issues of constitutional privilege and confidentiality asserted during discovery.

Let a peremptory writ of mandate issue directing that summary judgment be entered in favor of petitioner Tiedemann.

Elkington, J., and Newsom, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 25, 1978. Newman, J., was of the opinion that the petition should be granted.