Filed 4/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| REZA BIDARI et al., | B313073 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC602949) |
| v. | |
| AHANG ZARIN KELK, | |
| Defendant and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge. Affirmed.

Miller Barondess, Christopher D. Beatty, Minh-Van T. Do, and Eleanor S. Ruth for Plaintiffs and Appellants.

KP Law and Zareh A. Jaltorossian for Defendant and Respondent.

Yousseff Mikhail and Reza Bidari (Reza)[1] appeal from a judgment dismissing their lawsuit against Ahang Zarin Kelk following Kelk's successful motion for judgment on the pleadings on the sole claim in the operative complaint, malicious prosecution. The operative complaint alleges that Kelk falsely reported to law enforcement that Mikhail and Reza had attacked her, that police arrested Mikhail on this basis, and that Mikhail had to post bail to be released. It further alleges that Kelk's false reports led to a law enforcement investigation, at the conclusion of which the district attorney declined to press charges. The trial court concluded that the operative complaint does not sufficiently allege a malicious prosecution claim because such a claim requires an adjudicative proceeding. The court further denied Mikhail and Reza leave to amend.

On appeal, Mikhail and Reza challenge the court's reliance on *Van Audenhove v. Perry* (2017) 11 Cal.App.5th 915 (*Van Audenhove*), apparently the only published Court of Appeal decision to expressly hold that a warrantless arrest cannot alone support a malicious prosecution claim. They argue that the case is wrongly decided and distinguishable, and that the trial court's ruling finds no support in the broader body of malicious prosecution law. They further challenge the court's order denying them leave to amend to either address any deficiencies in the malicious prosecution claim by adding factual allegations, or to add new claims based on the facts already alleged, including several claims Mikhail and Reza had voluntarily dismissed without prejudice earlier in the litigation.

---

[1] Because this appeal requires us to refer to both Reza Bidari and his father, Taimoor Bidari, we refer to them by their first names. No disrespect is thereby intended.

The parties also dispute whether Reza has standing to appeal, and whether there are fatal deficiencies in the notice of appeal that deprive this court of jurisdiction to hear the appeal.

We conclude that Reza has standing to appeal and construe the notice of appeal to include Mikhail as an appellant. As to the merits, we agree with *Van Audenhove,* and agree with the court below that, under *Van Audenhove*, the operative complaint is fatally defective. The proposed factual allegations Mikhail and Reza proffer they could allege if given leave to amend would not address the deficiency in the only cause of action alleged in the complaint. Further, Mikhail and Reza are not entitled to amend their complaint to add causes of action they had voluntarily dismissed earlier in the litigation because Mikhail and Reza offered no explanation for their yearslong delay in seeking to do so. Nor are Mikhail and Reza entitled to add an abuse of process claim they had not previously alleged, because this claim is time-barred and does not relate back to the sole cause of action in the operative complaint. Accordingly, we affirm.

## FACTS AND PROCEEDINGS BELOW

Unless otherwise indicated, the factual background below derives from the properly pleaded allegations in the operative complaint and documents of which we take judicial notice.[2] (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232

[2] At times, we reference information from documents submitted in support of a summary judgment motion and thus contained in the record on appeal, which the parties requested the court also consider in deciding the motion for judgment on the pleadings. At Mikhail and Reza's request, we treat this information as a proffer of proposed allegations Mikhail and Reza could add, if granted leave to amend.

3

["[W]e treat the properly pleaded allegations of [the] complaint as true, and also consider those matters subject to judicial notice. [Citations.] 'Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties.' "].)

## A. Background Civil Litigation

In late 2014, Taimoor Bidari (Taimoor), Reza's father (see fn. 1, *ante*), obtained a $1.74 million judgment against Kelk in a civil lawsuit relating to ownership of certain Malibu property. Mikhail was not a party to that lawsuit, but is "a friend of [Taimoor]" and was "called as a witness by [Taimoor]" in the litigation regarding the Malibu property.

## B. The Attack and Investigation

On May 5, 2015, Kelk and her cousin, Justin Langdon, "were allegedly attacked and assaulted at Kelk's residence." (Capitalization omitted.) "[T]he Los Angeles County Sheriff's Department [(LASD)] Incident Report" regarding the alleged attack reflects that "Langdon stated he could not remember much [*sic*] details about the suspects[,] . . . [whom] he had never seen . . . before," and that Kelk stated she had been "attacked from behind, . . . [and] never saw the suspects and could not recognize them." (Capitalization omitted.)

On May 15, 2015, however, Kelk and Langdon filed two declarations with the Los Angeles County Superior Court identifying their assailants as Mikhail and Reza, and more specifically declaring that Mikhail had attempted to strangle Kelk "with a rope like object" and then stabbed Langdon when Langdon "interrupted the attack." These declarations were filed in support of an ex parte application Kelk submitted in the civil

4

action between Taimoor and Kelk regarding the Malibu property. The application sought to "strike the judgment in favor of Taimoor . . . and dismiss [the] action with prejudice based upon the use of potentially deadly force by [Taimoor]." The court denied the ex parte application.

Mikhail was present at the courthouse on the morning the court heard Kelk's ex parte application, and at that time, "Langdon and Kelk identified [Mikhail] to [LASD] deputies as the person who ha[d] attempted to kill them on May 5th." Mikhail "was arrested in the view of the public, handcuffed and taken away from the courthouse. He was held on $1[,]000,000 bail. After posting a non-refundable bond of $100,000.00, he was released."

A few days later, Kelk obtained a temporary restraining order (TRO) against Mikhail. But the trial court dismissed the TRO when Kelk failed to appear at the hearing to prosecute the matter.

An LASD investigation followed, and involved "numerous interviews, [a] polygraph [test] and DNA test [of Mikhail]." The "action" and the investigation were "initiated at the direction of [Kelk and Langdon]." Included in the record of the trial court and the record on appeal are documents regarding the LASD investigation. Although we cannot properly take judicial notice of the substance of these documents, we consider them, as Mikhail and Reza ask us to do, as a proffer regarding the additional facts they might plead, were they granted leave to amend. (See fn. 2, *ante*.) According to Reza and Mikhail, these documents provide a basis on which they could allege that the investigation continued for nearly two years, and that law enforcement "obtained and executed search warrants (authorized by Los Angeles County

5

Superior Court judges) for Mikhail's and Reza's phone records and GPS locations and for Mikhail's vehicle . . . ; assembled photo line-ups involving Mikhail and Reza . . . ; obtained and reviewed surveillance footage . . . ; conducted crime scene and DNA analysis . . . ; [and] reviewed Reza's credit card receipts from the night of the alleged incident." Mikhail and Reza further proffer that, based on additional LASD reports, they could allege the results of the investigation support that Kelk and Langdon fabricated the attack. For example, Mikhail proposes to allege LASD concluded Langdon's "puncture wound" "[wa]sn't much more than a scratch" and was inconsistent with Langdon's story of the attack; that surveillance footage from the "crime scene" confirmed no one besides Kelk entered or exited Kelk's building around the time of the alleged attack; that Mikhail and Reza passed polygraph examinations; and that GPS records confirmed that Mikhail's cell phone was not in Malibu, the claimed location of the attack, when the alleged crime occurred.

Mikhail and Reza also propose to allege, based on documents in the trial court record and record on appeal, that as the investigation was winding down, Kelk enlisted a private investigator to record an interview with Mohammed Ordoubadi, Reza's former brother-in-law, in which Ordoubadi claimed Taimoor and Mikhail solicited him to be the getaway driver for the attempted murder of Kelk, and that the district attorney ultimately concluded Kelk had paid Ordoubadi to offer this false account.

The operative complaint alleges that, "after months of investigation, . . . [the] district attorney[ ] . . . determined the action lacked merit or if pursued would result in a decision in favor of [Mikhail] and declined prosecution." (Capitalization

6

omitted.)  Further to this point, Mikhail and Reza proffer that, based on a "Los Angeles County district attorney charge evaluation worksheet" (boldface and capitalization omitted) contained in the trial court record, they could allege that the district attorney made statements indicating it chose not to pursue charges against Mikhail because the district attorney concluded the case against Mikhail was "not even a close call." Among the reasons included in the document was that "the crime scene appeared staged. . . . [T]he blood spatter or droplets in the purported crime scene were as if the injured person, here [Langdon] who claimed to have been stabbed in the arm, apparently intentionally allowed himself to bleed in a way aimed at being later able to claim he [bled at] the scene.  There appeared to be no effort to hold the wound or cover it in any way. This was abnormal and immediately seen as unusual."  Other reasons noted in the document included that "[t]he only ID is a voice ID by an extremely biased witness/victim with a long history with the family of the alleged assailants"; "[t]here is no helpful video, finger print, trace or DNA evidence"; and that Kelk's ex-husband told detectives that he paid Ordoubadi to lie, at Kelk's direction, and that he believes Kelk "made up" the story about the attack because "she was simply angry about losing the Malibu condominium following the court['s] order[ ]" in the civil lawsuit.

## C.    The Instant Lawsuit

In December 2015, Mikhail and Reza filed suit against Kelk and Langdon[3] alleging claims for libel per se and intentional infliction of emotional distress (IIED) based on the declarations Kelk submitted and statements she and her counsel made before the court in connection with the civil ex parte request.  They also alleged a claim for malicious prosecution based on Kelk directing sheriff's deputies to publicly arrest Mikhail and the resulting bail bond and LASD investigation.

Kelk demurred to the original complaint, which the court overruled.  In so doing, the court rejected the arguments that the litigation privilege barred the IIED and libel claims, that the complaint failed to sufficiently allege a "prosecution" that could give rise to a malicious prosecution claim, and that the complaint failed to allege a "prosecution" that terminated in Mikhail's favor.

In May 2015, Mikhail and Reza filed a first amended complaint, now the operative complaint in the action, adding claims against Kelk for defamation, IIED, and negligence, based on Kelk allegedly telling three individuals that Mikhail "attempted to kill her."  The first amended complaint does not allege who these individuals are or the context in which Kelk made these statements to them.

Kelk moved to strike the first amended complaint as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure section 425.16 (the anti-SLAPP statute). The court denied the motion.  Although the court concluded that

---

[3] Mikhail and Reza were unable to serve Langdon, who lived abroad, and they eventually dismissed him as a defendant without prejudice.  Langdon is not a respondent in this appeal.

8

several of the causes of action involved protected activity, it further concluded Mikhail and Reza had made a prima facie showing as to the merits of those causes of action, including the malicious prosecution cause of action.[4]

Thereafter, the case was reassigned to a different judicial officer in the Van Nuys courthouse.

In July 2020, plaintiffs voluntarily dismissed without prejudice the claims against Kelk for libel per se, IIED, defamation, and negligence, leaving only the malicious prosecution claim.

### D. Motions for Summary Judgment and Judgment on the Pleadings Regarding the Malicious Prosecution Claim

Mikhail and Reza moved for summary judgment on the claim for malicious prosecution. To support their motion, they filed declarations, police reports, and other documents related to the extent of the investigation and the district attorney's decision not to file charges.[5] They also relied on the documents of which we have taken judicial notice regarding the TRO Kelk obtained.

The court denied Mikhail and Reza's summary judgment motion. The court noted that, although the exhibits provided

---

[4] The first amended complaint also alleged claims for defamation, IIED, and negligence against Ordoubadi and a civil conspiracy claim against Kelk and Ordoubadi. The trial court struck those claims in response to an anti-SLAPP motion.

[5] These documents are the source of the detailed description of the investigation provided in the portion of the factual summary above that we treat as a proffer of additional allegations Mikhail and Reza could make, if given leave to amend.

"suggest that [Kelk and Langdon] made the whole thing up," Mikhail and Reza had not met their burden on summary judgment because "the actions of the police and the prosecutor are merely investigatory and do not satisfy the prosecution element before charges are filed."

Following up on this ruling, Kelk moved for judgment on the pleadings, arguing that Mikhail's complaint failed to state a claim for malicious prosecution because it did not allege that Kelk initiated a criminal prosecution. The court granted the motion. It observed that initiating a plaintiff's arrest and a criminal investigation against a plaintiff—at least when, as here, the arrest was not pursuant to a warrant obtained in judicial proceedings—is not alone a basis for a malicious prosecution claim, citing *Van Audenhove, supra,* 11 Cal.App.5th 915. More specifically, the court concluded that a warrantless arrest and/or a criminal investigation could not satisfy the " 'action' or 'proceeding' " element of a malicious prosecution claim.

The court granted the motion "without leave [to amend] because there is no cure for the flaw in the cause of action," but did not further elaborate. There is no reporter's transcript of the hearing to indicate whether Mikhail or Reza requested leave to amend, nor have they represented to this court that either of them did so.

Because the court's order regarding the malicious prosecution action disposed of the only remaining cause of action in the FAC, the trial court dismissed the "entire . . . action" and entered judgment "in favor of . . . Kelk . . . and against . . . Mikhail and Reza," further ordering that [Mikhail and Reza]

take nothing against [Kelk]" and that Kelk "shall recover from . . . Mikhail and Reza . . . allowable costs of suit."

### E. Procedural Background Regarding Notice of Appeal

A timely notice of appeal was filed that identified as the filing attorney or party acting without an attorney both Reza and Mikhail. The notice also identified both Reza and Mikhail as the "plaintiff[s]/petitioner[s]" (capitalization omitted), but listed only Reza as the appealing party. The notice indicated it was appealing a "[j]udgment after court trial," dated April 14, 2021. The judgment of dismissal was actually entered on May 12, 2021 and was not after a court trial; the order granting the motion for judgment on the pleadings was dated April 14, 2021.

This court initially dismissed the appeal initiated by this notice for failure to pay the requisite fees and comply with rules regarding the record on appeal. Reza and Mikhail, through newly-engaged counsel, filed a motion to vacate the dismissal. Kelk opposed the motion to vacate the dismissal, arguing that dismissal was also proper because Mikhail had not signed the notice of appeal, and because that notice identified an incorrect date for the judgment.

In response, Mikhail and Reza provided declarations attesting to Mikhail having filed a separate notice of appeal as well, which he signed, "on the same day at about the same time" as the notice signed by Reza, and claiming that Mikhail "[did] not know why th[is] court's docket does not reflect [his] notice of appeal." (Capitalization omitted.) Mikhail claimed he and Reza did not become aware that his notice of appeal had not actually been filed with the court until the dismissal proceedings before

11

this court.  The declaration attached a nonconformed notice of appeal signed by Mikhail and identifying him as the appealing party.

This court vacated the dismissal and reinstated the appeal. "The determination of whether . . . Mikhail timely filed a notice of appeal [was] deferred to the panel . . . that will hear the appeal." Accordingly, we address the issue below.

## DISCUSSION

On appeal, Mikhail and Reza argue that the court erred in granting the motion for judgment on the pleadings, and that they should be permitted to amend the first amended complaint. Kelk disagrees, and also disputes that this court has jurisdiction to hear the appeal, arguing that Reza lacks standing and that Mikhail did not file a timely notice of appeal.

We conclude that Reza has standing and that, liberally construing the timely notice of appeal filed by Reza, it permits both Mikhail and Reza to appeal.  As to the merits, we disagree that the trial court erred and affirm the judgment and the order denying leave to amend.

### A.     Reza's Standing to Appeal

Kelk first argues that Reza lacks standing to appeal, because the only cause of action remaining in the lawsuit at the time the court dismissed it was the malicious prosecution claim, in which Mikhail was the sole plaintiff.  "Any party aggrieved may appeal[,]" however.  (Code Civ. Proc., § 902.)  A party is aggrieved if he or she " 'has an interest which appears on the record.' "  (*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 58.)  The judgment in this action was entered as against both Reza and Mikhail, and

12

required both to pay Kelk's costs. In addition, although the order granting Kelk's motion for judgment on the pleadings that most immediately led to the final entry of judgment involved a cause of action in which Reza was not a named plaintiff, that order also denied leave to amend the first amended complaint in any manner—including any amendments to reallege causes of action Reza had voluntarily dismissed without prejudice and/or amendments to add Reza as a plaintiff to the malicious prosecution cause of action. Such amendments were more than a theoretical possibility, as the investigation on which the malicious prosecution claim was based was focused in part on Reza, who Kelk had also identified as one of her assailants. We therefore conclude that Reza has an interest in the action that appears on the record, and that he is an aggrieved party with standing to appeal the judgment.

## B. Timeliness of Mikhail's Appeal

Mikhail and Reza argue that the notice of appeal Mikhail signed and unsuccessfully attempted to file should be deemed a timely notice of appeal for various reasons. We need not decide whether they are correct, because we find persuasive Mikhail and Reza's alternative argument that the timely-filed notice of appeal signed by Reza applies to Mikhail as well as Reza.

"Once a notice of appeal is timely filed, the liberal construction requirement compels a reviewing court to evaluate whether the notice, despite any technical defect, nonetheless served its basic function—to provide notice of who is seeking review of what order or judgment—so as to properly invoke appellate jurisdiction." (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 883 (*K.J.*).) Timely-filed notices of appeal " ' "are to be liberally construed so as to protect the right of

13

appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*Id.* at p. 882; accord, *Beltram v. Appellate Department* (1977) 66 Cal.App.3d 711, 714 ["once a notice is filed it is to be construed liberally in favor of its sufficiency"].) Here, the timely-filed notice of appeal clearly identified the judgment being appealed, included the names of both Reza and Mikhail as the parties filing the notice, and arose from an action that, at the time of the judgment, involved only a claim against Mikhail alone. "[W]hen read in connection with [this] record," "[i]t [was] perfectly apparent from the notice . . . that such notice was filed on behalf of [Mikhail as well]." (*Chung Sing v. Southern Pacific Co.* (1918) 178 Cal. 261, 263; *id.* at pp. 263–264 [that notice of appeal used "the name 'C. A. Burton' . . . to designate one of the appellants [actually named George Blackburn] was solely due to inadvertence" and thus "the adverse party could not have been misled thereby"]; see *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1216–1217 ["[l]iberal construction of the notice of appeal [signed only by husband], which does not expressly identify the name of the appealing party, but which does identify a judgment subjecting the husband and wife to the same award, compels our conclusion that both [husband and wife] have appealed"].)

We therefore construe the timely-filed notice of appeal as being filed by both Reza and Mikhail.

### C.     Malicious Prosecution Claim

To state a claim for malicious prosecution based on either a civil or criminal proceeding, a plaintiff must allege "that [a] prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor

14

[citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50; accord, *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341 [requirements apply to malicious prosecution claims based on civil or criminal proceeding].) Courts have historically construed the term "action" in this context to mean "the institution of some judicial proceeding or legal process." (*Eustace v. Dechter* (1938) 28 Cal.App.2d 706, 710.)

Mikhail and Reza argue the court incorrectly concluded the complaint did not allege the "action" needed to support a malicious prosecution claim, and thus erred in sustaining the demurrer on this basis. They identify as potential "actions" that support their malicious prosecution claim: (1) the law enforcement investigation of Mikhail and Reza, (2) Reza's arrest, (3) bail bond proceedings, and (4) proceedings to obtain the warrants needed to facilitate the investigation. The first two of these are alleged in the first amended complaint. Mikhail and Reza argue the final two can be inferred from the allegations in the pleading, and/or that, if granted leave to amend, they could explicitly allege them. We address each of these purported "actions" in turn below.

### 1. *Investigation*

At least three Courts of Appeal have already rejected the argument that an investigation alone can support a malicious prosecution claim. These cases hold that "a mere investigation which does not lead to the initiation of proceedings before an administrative board [or court] having power to take action adversely affecting plaintiff's legally protected interests is not a sufficient basis upon which to f[ind] a malicious prosecution

15

action." (*Imig v. Ferrar* (1977) 70 Cal.App.3d 48, 58 (*Imig*); accord, *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 736–737 (*Brody*) [hearing to which plaintiff subjected "was a prelude to the possibility of administrative action of a more formal nature" and "terminated . . . without action adverse to [plaintiff]" so it could not provide the basis for a malicious prosecution claim]; *Ferraris v. Levy* (1963) 223 Cal.App.2d 408, 412 ["summarily disposing of malicious prosecution claims based on allegations that the defendants caused plaintiff to be investigated by the district attorney and the postmaster" who "refused to institute any proceedings against the plaintiff" because it is "well[-]settled" that "criminal proceedings are not instituted unless and until the warrant or summons is issued"].) These cases acknowledge that although a plaintiff may be "put to a certain amount of inconvenience to persuade the department [or other prosecuting body] that the charges [being contemplated] [are] unfounded" (*Imig*, *supra*, at p. 59), such injury "is not itself sufficient to justify a malicious prosecution action" if the authorities did not initiate proceedings against the plaintiff. (*Ibid.*)

Mikhail and Reza cite dictum in *Imig* that suggests an investigatory action might support a malicious prosecution claim under circumstances not present in that case. (See *Imig, supra*, 70 Cal.App.3d at p. 60 ["Sometimes, however, the invasion of the plaintiff's legally protected interest occurs without a formal hearing, and it is the plaintiff who initiates the formal proceedings in order to secure reinstatement of his position or license. In such cases a malicious prosecution action may lie."].) We do not find this dictum persuasive. The two cases *Imig* cites in making this observation are likewise unpersuasive: One

16

is a federal case, and the other involved both an investigation and administrative proceedings. (See *ibid.*, citing *Hardy v. Vial* (1957) 48 Cal.2d 577, 580 (*Hardy*) [malicious prosecution claim based on complaint and resulting hearing at which "State Personnel Board found that the charges [based on which plaintiff was dismissed as a professor] were untrue and . . . [t]he board . . . ordered defendant . . . to return plaintiff to his position at the college"] & *Melvin v. Pence* (D.C. Cir. 1942) 130 F.2d 423, 424–425.) We thus need not consider whether anything like the hypothetical circumstances referenced in *Imig* are present here.

Mikhail and Reza also argue these cases should not bar their malicious prosecution claim—or, in the alternative, do not support denying leave to amend it—because the burdensome nature of the investigation they have or could allege renders these cases inapplicable. But *Imig* recognizes that a maliciously instigated investigation may burden the subject thereof, and nevertheless concludes such an investigation cannot constitute an "action" or "proceeding" supporting a malicious prosecution claim. (*Imig, supra*, 70 Cal.App.3d at pp. 58–59.) The extent of the alleged investigation is thus not a basis on which to distinguish these cases.

### 2.  *Warrantless Arrest*

*Van Audenhove, supra,* 11 Cal.App.5th 915 holds that a warrantless arrest—or any other event lacking "some adjudicatory involvement by a court"—cannot constitute an "action" for purposes of malicious prosecution. (*Id.* at p. 925.) Mikhail and Reza argue that *Van Audenhove* is wrongly decided and distinguishable from the facts alleged here. We disagree as to both points.

17

a.      *Van Audenhove's* reasoning is persuasive

We find the reasoning in *Van Audenhove* persuasive and therefore summarize the case in some detail.  In *Van Audenhove*, the malicious prosecution plaintiff and the defendant were neighbors.  (*Van Audenhove, supra,* 11 Cal.App.5th at p. 917.)  The sheriff's department arrested the plaintiff based on the defendant's false accusations that the plaintiff stalked him and his wife.  (*Ibid*.)  Police took the plaintiff to jail and released him the next day; two months later the district attorney declined to bring a case, concluding " ' "[t]his is a neighbor dispute[,] not a stalking." ' " (*Ibid*.)  The trial court dismissed the complaint for lack of a judicial proceeding or action underlying the malicious prosecution claim.  On appeal, plaintiff argued that " '[a]ll that is required in actions for malicious prosecution against private persons is that the defendant has sought out the police or prosecutorial authorities and falsely reported facts indicating that [the] plaintiff has committed a crime.' " (*Id.* at p. 918.)

The Court of Appeal in *Van Audenhove* disagreed.  In so doing, it relied in large part on two Supreme Court cases discussing the intersection between false arrest and malicious prosecution:  *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744 (*Asgari*) and *Singleton v. Perry* (1955) 45 Cal.2d 489 (*Singleton*).  (*Van Audenhove, supra,* 11 Cal.App.5th at pp. 920-921.)  In that context, *Singleton* held that " ' "[n]o one can recover damages for a legal arrest and conviction; therefore, in cases of malicious prosecution it becomes necessary to await the final determination of the action.  But the same principle does not apply to an action for false imprisonment, as the form of action is based upon an illegal arrest and no matter ex post facto can legalize an act which was illegal at the time it was done.

18

From this it will be seen that one of the essential elements of a complaint for malicious prosecution is that the proceeding upon which it is based has finally terminated in favor of the plaintiff." ' " (*Singleton*, *supra*, at pp. 494–495, italics omitted.) *Van Audenhove* interpreted this language as reflecting a general principle that, "when there is a legal arrest, the arrestee does not yet have a cause of action for . . . malicious prosecution" (*Van Audenhove*, *supra*, at p. 920) and that it is only through some adjudicative proceeding before a court that "the arrestee's cause of action for malicious prosecution becomes ripe, and the damages available relate back to the arrest." (*Ibid*.)

  *Van Audenhove* found further support for this principle in *Asgari*, which implicitly treated arraignment as the earliest point at which a malicious prosecution claim becomes ripe. (*Asgari, supra*, 15 Cal.4th at pp. 748, 752–759; see *Van Audenhove, supra*, 11 Cal.App.5th at p. 921; accord, *County of Los Angeles v. Superior Court* (2000) 78 Cal.App.4th 212, 221 [under *Asgari* "malicious prosecution begins . . . [at] the point at which the [plaintiff] is arraigned"].)  Combining *Singleton*'s conclusion that a lawful arrest cannot alone support a malicious prosecution claim and *Asgari*'s conclusion that a malicious prosecution claim only ripens at the arraignment stage—which, when an individual is arrested without a warrant, is the first adjudicative proceeding and the first involvement of the court[6]—*Van Audenhove*

---

  **[6]** *Van Audenhove* did not have occasion to determine whether obtaining an arrest warrant could supply sufficient adjudicative involvement of the court to support a malicious prosecution claim, although the opinion suggests that it might. The facts of this case do not present this issue.  We therefore decline to comment on the dictum in *Van Audenhove* on this issue.

19

concludes that "some adjudicatory involvement by a court" is necessary to satisfy the "action" or "proceeding" element of a malicious prosecution claim (*Van Audenhove, supra*, at p. 925), and more specifically that a warrantless arrest alone cannot satisfy that element. (*Id.* at pp. 920–921; see *id.* at p. 924 ["[I]t turns on whether a court gets involved. . . . [Citation.] . . . After charges are filed, the actions of the court are fully adjudicatory."].)

*Van Audenhove* acknowledges, as do we, that the Restatement Second of Torts reaches the opposite conclusion (*Van Audenhove, supra*, 11 Cal.App.5th at p. 923): It provides that, for the purposes of a malicious prosecution action, one of the ways criminal proceedings can be instituted is when a person "is lawfully arrested on a criminal charge." (Rest.2d Torts, § 654. subd. (2)(c); see also *id.*, com. e ["[a lawful] arrest is . . . an initial step in a criminal proceeding; and if it is made or instigated without probable cause, the remedy is by an action for malicious prosecution"].) *Van Audenhove* rejects the Restatement approach as unpersuasive, noting that the Restatement cites no case law to support its approach, and instead relies on the authors' conclusion as to what is equitable; if a malicious prosecution claim is not recognized, someone wronged by an arrest maliciously caused by a private individual would be left with no legal recourse. (*Van Audenhove*, *supra*, at p. 923.) *Van Audenhove* notes that there are numerous areas in which, in the interest of serving some larger public policy goal, the law leaves a wrong without a remedy, and that permitting harm from a maliciously procured arrest to go unremedied serves the larger public policy purpose of "promot[ing] free and uninhibited reports to the police." (*Id.* at p. 924.) *Van Audenhove*

thus rejects such a lack of remedy as a basis for deeming a warrantless arrest an "action" supporting a malicious prosecution claim. (*Ibid.*)

      b.  Mikhail and Reza's arguments that *Van Audenhove* was wrongly decided are unpersuasive

  Mikhail and Reza argue that *Van Audenhove* got it wrong. First, they argue its holding is inconsistent with the general judicial trend of expanding the definition of "action" for purposes of malicious prosecution, noting that courts have expanded that definition to encompass the filing of a cross-complaint (*Bertero*, *supra*, 13 Cal.3d at pp. 51–52), prosecuting a portion of or a single cause of action within an otherwise legitimate lawsuit (*Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136, 153–154), "continuing" to prosecute a complaint where it lacks probable cause (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970), a will contest (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 692), an administrative proceeding (*Hardy*, *supra*, 48 Cal.2d at pp. 580–582), a postjudgment order to show cause proceeding (*Chauncey v. Niems* (1986) 182 Cal.App.3d 967, 976), and a writ of attachment (*Campbell v. White* (1962) 199 Cal.App.2d 382, 384). But *Van Audenhove* acknowledged that courts have extended the definition of "action" to encompass several actions beyond bringing criminal charges or filing a civil lawsuit, yet it concluded—correctly—that an arrest still does not fit within these expanded definitions. (*Van Audenhove, supra*, 11 Cal.App.5th at p. 920.) Moreover, each of these examples involves adjudicative proceedings assessing criminal or civil responsibility. Warrantless arrest, by contrast, is a precursor to

21

such adjudication and the involvement of an adjudicative body. It thus does not logically follow from these examples that the definition of "action" should be further expanded to encompass a warrantless arrest.

Second, Mikhail and Reza argue that *Van Audenhove*'s reasoning is "contrary to our Supreme Court's rulings." They claim *Van Audenhove* "relies . . . on a misreading of *Singleton,*" citing a single sentence in that opinion: "Malicious prosecution is procuring the arrest *or* prosecution of another under lawful process, but from malicious motives and without probable cause." (*Singleton, supra*, 45 Cal.2d at p. 494.) Read in context, however, this phrasing does not support the larger conclusion that an arrest is alone a sufficient basis for a malicious prosecution claim, something that the California Supreme Court subsequently confirmed by holding in *Asgari* that " '[m]alicious prosecution "consists of initiating or procuring the arrest *and* prosecution of another under lawful process, but from malicious motives and without probable cause." ' " (*Asgari, supra*, 15 Cal.4th at p. 757, italics added & omitted.) Mikhail and Reza further argue that *Van Audenhove* incorrectly relied on *Asgari*, because it reflects a rule that "pertains to a context that is not present here— the scope of damages for a public employee who has statutory immunity for malicious prosecution." This argument is referring to the fact that *Asgari* discussed the intersection between malicious prosecution and false imprisonment for the purpose of determining to what extent the defendants, two police officers and a police department, could take advantage of a statute granting law enforcement immunity from suit for malicious prosecution, but not false imprisonment claims. (*Asgari, supra*, 15 Cal.4th at p. 757, citing Gov. Code, §§ 820.4, 821.6.) But the

22

proposition for which *Van Audenhove* relied on *Asgari* is not tied to any particular type of defendant or factual scenario. The elements of a malicious prosecution claim do not change depending on whether the defendant is a private citizen or a police officer who is immune to suit for malicious prosecution. Thus, our Supreme Court's conclusion regarding the boundaries of a malicious prosecution claim for the purposes of assessing whether a public entity defendant is immune thereto applies equally in cases involving other types of defendants as well. (See *Van Audenhove, supra*, 11 Cal.App.5th at p. 921 ["Admittedly, both *County of Los Angeles* and *Asgari* involved an unlawful arrest by public entity defendants. . . . Nevertheless, . . . they manifest the general understanding that an arrest alone is not malicious prosecution," italics omitted].)

Third and finally, Mikhail and Reza argue that *Van Audenhove*'s basis for rejecting the Restatement approach is no longer valid for various reasons. They argue that, since the Restatement was written, courts in other states have recognized arrest as a basis for a malicious prosecution claim. But it remains true that no California cases have done so. To the contrary, as outlined above, our Supreme Court cases suggest an opposite approach by California courts. Mikhail and Reza also note that the California Supreme Court has cited with approval other aspects of the Restatement Second of Torts regarding malicious prosecution. But the Supreme Court is, of course, free to adopt only selected portions of the Restatement. Mikhail and Reza also characterize *Van Audenhove* as having "mist[aken] the Legislature's and the Supreme Court's policy priorities" when it concluded that leaving an individual who has been subject to a maliciously procured arrest without a remedy is acceptable

23

in  the interest of larger public policy goals.  They argue that a recent change in law that adds the making of an intentionally false police report as an exception to the litigation privilege shows that the Legislature has prioritized a right of redress for an individual injured by false police reports over the larger public policy goal of preserving open communication with law enforcement.  (See Civ. Code, § 47, subd. (b)(5) ["[t]his subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed . . . knowing that the report is false, or with reckless disregard for the truth or falsity of the report"]; Stats. 2020, ch. 327, § 2 [adding subdivision (b)(5) to Civ. Code, § 47, eff. Jan. 1, 2021].)  On this basis, they question the viability of *Van Audenhove*'s citation to that policy goal as a basis for accepting that an individual harmed by a maliciously procured arrest may not have a remedy.  We disagree that this change in law provides a basis for questioning *Van Audenhove*'s analysis.  To the contrary, this development moots the equitable concerns the Restatement cited as a basis for its proposed approach.  At the time the Restatement was written, malicious prosecution was the only theory of recovery for a plaintiff injured by a private citizen maliciously procuring the plaintiff's arrest, because the litigation privilege at the time protected statements made to police officers to report suspected criminal activity (see, e.g., *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 355) and applied to all torts *except* for malicious prosecution. *(Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29.)  Thus, unless the Restatement permitted recovery via a malicious prosecution claim, such a plaintiff would be left without a remedy.  Under the

24

post-2020 version of Civil Code section 47, however, the litigation privilege no longer prevents such a plaintiff from suing for other torts, such as intentional infliction of emotional distress. Thus, the Restatement approach to malicious prosecution claims is no longer the only way to assure that injury does not go without a remedy at law.

For these reasons, we decline Mikhail and Reza's invitation to disagree with *Van Audenhove*, and instead conclude that its reasoning and holding remain sound.[7]

### c. *Van Audenhove* is not factually distinguishable

We likewise find unpersuasive Mikhail and Reza's arguments that *Van Audenhove* "must be confined to its facts," which they characterize as involving no "substantial financial expenditure by the unjustly accused" as a result of the challenged conduct and no bail proceeding or investigation involving

---

[7] Mikhail and Reza also argue that the demurrer and anti-SLAPP motion rulings earlier in the case expressly recognize causing an arrest and investigation can provide a basis for a malicious prosecution claim, and that the judicial officer to whom the case was later assigned was thus not permitted to reach an opposite conclusion on this issue in deciding the motion for judgment on the pleadings. The court, however, was not bound by the prior rulings, and had the authority to make different rulings at any time prior to the entry of judgment. (*Chui v. Chui* (2022) 75 Cal.App.5th 873, 888, fn. 17; *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156.) Moreover, our review of the judgment and order granting the motion for judgment on the pleadings is de novo. We thus need only consider whether the ruling on appeal is correct, not whether the rulings below were generally consistent with each other as to this issue.

warrants. But the extent of the damages Mikhail and Reza allege they suffered as a result of the challenged conduct has no bearing on whether that conduct meets the definition of "action" or "proceeding" under the applicable case law. And, for the reasons we discuss below, neither bail nor warrant proceedings can support a malicious prosecution claim. *Van Audenhove* is thus factually distinguishable.

### 3. *Bail Proceeding and Search Warrant Proceeding*

Mikhail and Reza also argue that the court's analysis took an overly restrictive view of the complaint, and did not consider that, taking all reasonable inferences from the complaint's allegations, it alleged not only a warrantless arrest and investigation, but judicial bail proceedings. Similarly, in arguing for leave to amend, Mikhail and Reza claim they could allege that the investigation necessarily involved judicial proceedings through which law enforcement obtained warrants. Even assuming they are correct that a bail hearing or a proceeding to obtain a search warrant constitutes a "proceeding" for purposes of malicious prosecution, these are acts that cannot be terminated in favor of a malicious prosecution plaintiff in the manner required to support a malicious prosecution cause of action. A bail hearing does not assess or depend on criminal culpability. (See Pen. Code, § 1275, subd. (a)(1) ["[i]n setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case"].) And the proceeding in which law enforcement obtains a search warrant necessarily terminates unfavorably for

26

that individual, in that the court is permitting an invasion of the individual's privacy and otherwise protected legal rights. Even if the evidence supporting the finding of probable cause upon which the court issued a search warrant is later revealed to be fabricated, this does not render the outcome of the warrant proceeding favorable to the subject of the warrant. Thus, to the extent Mikhail and Reza argue the malicious prosecution claim was or could be based on a bail hearing or a proceeding in which a search warrant was obtained, such a claim still fails because Mikhail and Reza cannot allege that these "actions" were terminated in Reza and/or Mikhail's favor.

Having considered and rejected all the possible bases on which Mikhail and Reza argue they have alleged or could allege an "action" or "proceeding" sufficient to support their malicious prosecution claim, we conclude the trial court correctly sustained the demurrer to the first amended complaint. We further conclude that Mikhail and Reza have not identified any way in which they could have amended the malicious prosecution cause of action to avoid the fatal deficiencies on which the court based its demurrer ruling.[8]

_____

[8] Kelk argues that Mikhail and Reza have not established that they requested leave to amend below, and that we therefore need not consider this request now. " 'When any court makes an order sustaining a demurrer without leave to amend the question whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made.' [(Code of Civ. Proc., § 472c, subd. (a).)] Thus, despite [an] appellant's failure to attempt amendment in the trial court, [an] appellant is entitled by statute to argue here that leave to amend should have been granted." (*Kolani v.*

27

## D. Additional Proposed Claims

Mikhail and Reza next argue that they should have been granted leave to amend the first amended complaint to reassert the causes of action for IIED, defamation, and negligence that they had previously dismissed without prejudice, and/or to assert a new claim for abuse of process.

As to the argument that the court erred in denying leave to amend to add an abuse of process claim based on statements made in connection with Kelk's filing of the ex parte application in the civil suit between Taimoor and Kelk, we conclude that amendment would be futile, as it is barred by the applicable one-year statute of limitations. (See *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 886–887 ["Because abuse of process is an injury to the person, the statute of limitations . . . is one year. (Code Civ. Proc., § 340, subd. (3).)"].) Although such a claim would not be time-barred if it relates back to the operative complaint, the relation-back doctrine requires that the proposed amendment "(1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the

---

*Gluska* (1998) 64 Cal.App.4th 402, 410–411 (*Kolani*), italics omitted.) This same approach applies to an order granting a motion for judgment on the pleadings without leave to amend. (See *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 296–297 ["[a] judgment on the pleadings and a judgment following the sustaining of a demurrer are reviewed under the same de novo standard"]; *Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852 ["[i]n the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action"].)

28

original [complaint]." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408-409, italics omitted.) Applying these requirements here, the abuse of process claim does not relate back to the only existing claim in the operative complaint—the malicious prosecution claim—because the malicious prosecution claim is based on entirely different instrumentalities causing the alleged injury (the investigation, arrest, and bail hearing), and at least a partially different injury (the emotional distress, stress, and invasion of privacy resulting from the investigation and arrest, as well as the monetary loss from posting bail). (See *ibid.*)

Finally, Mikhail and Reza argue they should be allowed leave to reallege the IIED, negligence, and defamation causes of action Mikhail and Reza voluntarily dismissed years ago. "Leave to amend may be denied if there is prejudice to the opposing party, such as delay in trial, loss of critical evidence, or added costs of preparation." (*Kolani*, *supra*, 64 Cal.App.4th at p. 413.) "There is [also] a platoon of authority to the effect that a long unexcused delay is sufficient to uphold a trial judge's decision to deny the opportunity to amend pleadings." (*Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 692.) In arguing they should be allowed leave to revive their previously discarded claims, Mikhail and Reza rely on *Hirsa v. Superior Court* (1981) 118 Cal.App.3d 486. But in that case, the plaintiff had been diligent in seeking a non-dilatory amendment. (*Id.* at p. 490.) Here, by contrast, far from diligently pursuing these causes of action, Mikhail and Reza abandoned them and only proposed to reallege them at the last possible moment when the lawsuit might otherwise be entirely concluded. They offer no explanation for their delay in reasserting these causes of action. In the absence of an explanation, this timing smacks

29

of gamesmanship. (See *Green, supra,* 28 Cal.App.4th at pp. 693-694 ["[g]iven lack of any excuse for not pleading the defense earlier—the decision not to plead negligence was legal gamesmanship in its purest sense—we cannot say the trial court abused its discretion in denying the request to amend," fn. omitted].) We stress that Mikhail and Reza are *not* seeking to assert new legal theories that they did not think to allege initially, but rather theories of which Mikhail and Reza have long been well aware, actively pursued for years, and then abandoned, thereby steering the litigation away from those theories. Mikhail and Reza seek now to again reset the course of the litigation, without explanation. Were we to permit them to do so, we would be rewarding an inefficient and piecemeal approach to litigation, through which Mikhail and Reza were able to spare themselves the time and expense of continuing to pursue these claims until Mikhail and Reza again viewed the claims as advantageous. We acknowledge that, as the dissent points out, this does not rise to the level of the gamesmanship present in *Green*. But it smacks of gamesmanship nonetheless.

Mikhail and Reza's arguments focus on a purported lack of prejudice and delay from permitting the amendments. They argue that there would be no prejudice from permitting them to revive these claims, because doing so only adds legal theories of recovery to facts already alleged in the first amended complaint, and because these legal theories were part of the litigation for years, during which time Kelk was free to seek discovery related to them and otherwise develop defenses thereto. They further argue that permitting amendment would not cause delay, because these causes of action have already survived demurrers and anti-SLAPP motions, which might otherwise be brought

30

immediately following amendment.  Nevertheless, it is inherently inefficient to permit a plaintiff to hold partially litigated claims waiting in the wings until the plaintiff deems it strategically convenient to resurrect them.  Such inefficiency will inevitably cause some delay.

Mikhail and Reza have thus failed to demonstrate that they should have been granted leave to add any of the proposed causes of action.[9]

---

[9] Because we conclude above, based on non-statute-of-limitations grounds, that Mikhail and Reza should not have been granted leave to reallege the IIED, negligence, and defamation causes of action, we need not assess whether these causes of action are time-barred.  We note, however, that any cause of action alleging injury from some act other than Kelk's reporting the alleged attack to law enforcement would most likely be time-barred for the same reasons the abuse of process claim is time-barred.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

I concur:



CHANEY, J.

32

BENDIX, J., Concurring and Dissenting.


I agree with my colleagues' recitation of the facts and concur with their conclusion that the trial court did not err in granting respondent Ahang Zarin Kelk's motion for judgment on the pleadings as to appellants', Yousseff Mikhail's, and Reza Bidari's, malicious prosecution claim. (*Van Audenhove v. Perry* (2017) 11 Cal.App.5th 915.) I also agree with my colleagues' conclusion not to grant appellants' request for leave to add an entirely new claim, one for abuse of process, or leave to amend their malicious prosecution claim where *Van Audenhove* is fatal to that claim.

Where I part company with my colleagues is in their refusal to grant appellants leave to add previously dismissed claims based on the inference of "gamesmanship" the majority draws merely from appellants' failure to explain why they did not seek such leave below. There is also no support in the record for the majority's finding of prejudice other than that the case would not be over. The majority's principal case authority does not support either of these findings. Given our jurisprudence liberally allowing amendment of pleadings even if requested for the first time on appeal, and respondent's failure to identify any prejudice, I would grant appellants' request for leave to allege the previously dismissed claims.

The majority gives the following reasons for denying such leave: (1) appellants engaged in "gamesmanship" in dismissing the claims; (2) appellants failed to explain why they did not seek to add back the claims below given how fatal *Van Audenhove* was to their remaining malicious prosecution claim; (3) under *Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686

(*Green*), such "long unexcused delay is sufficient" to upheld a trial court's denial of leave (*id*. at p. 692); (4) this is especially true for claims that had previously been in the trial court proceedings; and (5) there was prejudice caused by the "inefficiency" of allowing "a plaintiff to hold partially litigated claims waiting in the wings until the plaintiff deems it strategically convenient to resurrect them."

I agree that nowhere in appellants' appellate briefing do they explain why they dismissed their claims for negligence, defamation, libel per se, and intentional infliction of emotional distress after they had prevailed on respondent's dispositive pleadings attacking those claims and given that their dismissal of those claims postdated *Van Audenhove*.[1]  I disagree that *Green* compels the conclusion appellants' failure to provide that explanation would be reason alone to infer "gamesmanship."  The facts in *Green* constitute a difference in kind, not degree as the majority appears to conclude.  (See maj. opn., *ante*, at p. 30.)

*Green*'s complex procedural history is replete with facts— absent here—demonstrating, in the *Green* court's words, "legal gamesmanship in its purest sense." (*Green*, *supra*, 28 Cal.App.4th at p. 693.)  Originally, *Green* involved the plaintiffs' race discrimination claim against, among others, a mortgage broker that claimed it could not find lenders for plaintiffs' purchase of a house albeit plaintiffs had substantial assets.  To dispel an inference of discrimination, the broker changed its records to reflect the plaintiffs had requested " 'an "A" lender,' " which request the plaintiffs denied.  At the close of the plaintiffs' case, the plaintiffs sought to add a professional

_____

[1]  *Van Audenhove* was decided in 2017 and appellants dismissed their non-malicious prosecution claims in 2020.

negligence claim against the broker, which the trial court denied. The jury found in the plaintiffs' favor; at the same time, it rejected their claim that the broker's "less-than-adequate efforts" were based on race. (*Green*, *supra*, 28 Cal.App.4th at pp. 689–690.) Because of the inconsistency in this verdict, the trial court granted a new trial and gave the plaintiffs leave to add a professional negligence claim. The plaintiffs never filed an amended complaint adding a professional negligence claim.

When one of the plaintiffs failed to appear at her deposition after being ordered to do so, the parties agreed that there would be a retrial of the plaintiffs' race discrimination claim with no professional negligence claim. The plaintiffs, however, went back on this agreement when they opposed the broker's motion to preclude at retrial any cause of action except the original civil rights claim. (*Green*, *supra*, 28 Cal.App.4th at p. 690.) When the court denied the latter motion, it ordered the plaintiff to appear for her deposition with the proviso that if she failed to appear, the court would not allow the plaintiffs to sue for professional negligence. (*Ibid.*) The plaintiff disobeyed this second court order to appear for the deposition and the court then forbade the plaintiffs from pursuing a professional negligence claim. (*Id.* at p. 691.) On appeal, the appellate court upheld the trial court's ruling, but sent the case back for a new trial on the race discrimination claim.

At this point, the broker moved to add an affirmative defense based on its own negligence. The trial court denied the motion because that defense was inconsistent with the broker's verified answer to the original complaint blaming the plaintiffs' insufficient assets for its failure to obtain a loan. (*Green*, *supra*, 28 Cal.App.4th at pp. 691–692.) The plaintiffs prevailed at the

3

retrial of the race discrimination claim, and in the ensuing appeal, the broker argued the trial court abused its discretion in denying the broker's motion to add a negligence affirmative defense.

The appellate court quickly dispatched the broker's contention: "Of course, it is fairly obvious why the mortgage broker waited so long and why it articulated no excuse for its delay in seeking to amend. If the broker had asserted its own negligence prior to the first trial, it almost certainly would have lost the case on *some* theory. By waiting until after the first appeal and the subsequent stricture against allowing the Greens to amend, the case was perfectly postured for the assertion—now without cost—of professional negligence as an affirmative defense. Thus it is clear that the original 'failure' to include negligence as a defense was no failure at all, but a conscious strategic decision to win the entire case by prevailing on the race discrimination claim rather than risk defeat on a negligence claim. As such, the mortgage broker had no 'excuse' for not pleading the negligence defense prior to the first appeal." (*Green*, *supra*, 28 Cal.App.4th at p. 693.) In so concluding, *Green* also noted the inconsistency between the new negligence defense and the broker's previous verified pleading and its strategy at the first trial eschewing negligence with the resulting prejudice to the plaintiffs, who would have had "to substantially redo their trial strategy." (*Ibid.*)

I fail to see how *Green* supports the majority's inference of "gamesmanship" here. The record before us is silent, let alone not even remotely akin to *Green* such that an unexplained reason for not reasserting the claims earlier would be reason to deny appellants' request for leave to add back those claims.

Similarly, the record does not support the majority's assertion of prejudice based on "inherent" inefficiency and "strategically" "waiting in the wings" to reassert previously dismissed claims.  (Maj. opn., *ante*, at p. 31.)  Unlike in *Green*, there is nothing in the record demonstrating that appellants' dismissing those claims was "strategic."  The record also reveals no inefficiency other than that "inherent" in reviving a case.  Respondent's attack below was through dispositive motion practice as to *all* appellants' claims through either a demurrer or anti-SLAPP motion.  The trial court overruled or denied both salvos, including the litigation privilege defense respondent reasserts here in opposing leave to add back the previously dismissed claims.  There thus was no piecemeal motion practice.  The parties also do not claim they engaged in any discovery below.  Without at least some support in the record, the majority's reliance on "inherent" inefficiency would appear inconsistent with our jurisprudence of liberally allowing leave to amend even if not requested below, and even if doing so would reinstate a case.  (See, e.g., *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970–971 (*Aubry*) [" 'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment." ' "].)

Respondent's arguments regarding prejudice fare no better.  Respondent does not identify any prejudice other than the conclusory statement that memories may have been faded and "important documents" lost.  Respondent does not identify a single file or witness that would be unavailable.  It is also hard to

5

imagine that the events surrounding respondent's false and staged allegations against appellants would have faded from any participant's memory.

Respondent also claims she was deprived of the opportunity to conduct discovery of the factual bases for the previously dismissed claims. How so? Absent from respondent's argument is any citation to the record indicating that respondent was deprived of discovery or that respondent even engaged in any discovery as to any claim. Respondent claims granting leave to amend would increase litigation costs and cause delay. That is potentially true whenever leave to amend is granted on appeal.

Finally, in refusing to grant leave here, the majority distinguishes claims that were once in the case (for which granting leave on appeal the majority argues would reward "gamesmanship") from claims an appellant asserts for the first time on appeal (impliedly not supporting an inference of "gamesmanship"). The majority cites no authority for this analytic distinction. Nor does the majority explain why, under our jurisprudence and absent a record like in *Green*, the distinction would be relevant to whether a party should be given leave to amend to add potentially viable claims. (*Aubry*, *supra*, 2 Cal.4th at pp. 970–971.)

Finally, I note the irony in the majority's accusing appellants of "gamesmanship" given respondent's fraudulent (as determined by the Los Angeles County Sheriff and District Attorney) manipulation of law enforcement and judicial procedures causing, among other hardships, Mikhail's arrest and incarceration until he was able to post substantial bail.

6

For all these reasons, I would grant appellants leave to allege claims for defamation, libel per se, intentional infliction of emotional distress, and negligence.


BENDIX, J.